## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ROBERT CHILDS, | |
| Plaintiff, | |
| | Cause No. 4:23-cv-1002 |
| v. | |
| CITY OF ST. LOUIS, DANIEL ISOM, JEFFREY CARSON, DALE GLASS, ADRIAN BARNES, TONYA HARRY, UNKNOWN EMPLOYEE 1, UNKNOWN EMPLOYEE 2, UNKNOWN EMPLOYEE 3, UNKNOWN EMPLOYEE 4, UNKNOWN EMPLOYEE 5, UNKNOWN EMPLOYEE 6, UNKNOWN EMPLOYEE 7, UNKNOWN EMPLOYEE 8, UNKNOWN EMPLOYEE 9, UNKNOWN EMPLOYEE 10, UNKNOWN EMPLOYEE 11, UNKNOWN EMPLOYEE 12, UNKNOWN EMPLOYEE 13, UNKNOWN EMPLOYEE 14, UNKNOWN EMPLOYEE 15, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

COMES NOW, Plaintiff Robert Childs, by and through his undersigned counsel, and brings this Complaint for damages against Defendants City of St. Louis, Daniel Isom, Jeffrey Carson, Dale Glass, Adrian Barnes, Tonya Harry, and Unknown Employees 1-15, and states as follows:

## PARTIES

1.      Plaintiff Robert Childs, at all times relevant to this lawsuit, was a resident of the City of St. Louis, State of Missouri.

2.      Defendant City of St. Louis is a municipal entity in the State of Missouri.

3.      Defendant Daniel Isom, at all times relevant to this lawsuit, was the Director of Public Safety for the City of St. Louis. He is sued in his individual capacity.

4.      Defendant Jeffrey Carson, at all times relevant to this lawsuit, was the Interim Director of the Division of Corrections for the City of St. Louis. He is sued in his individual capacity.

5.      Defendant Dale Glass, at all times relevant to this lawsuit, was the Director of the Division of Corrections for the City of St. Louis. He is sued in his individual capacity.

6.      Defendant Adrian Barnes, at all times relevant to this lawsuit, was the Superintendent of the St. Louis City Justice Center. He is sued in his individual capacity.

7.      Defendant Tonya Harry, at all times relevant to this lawsuit, was the Chief of Security for the St. Louis City Justice Center. She is sued in her individual capacity.

8.      Defendant Unknown Employee 1, at all times relevant to this

lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

9.     Defendant Unknown Employee 2, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

10.     Defendant Unknown Employee 3, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

11.     Defendant Unknown Employee 4, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

12.     Defendant Unknown Employee 5, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

13.     Defendant Unknown Employee 6, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

14.     Defendant Unknown Employee 7, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

15.     Defendant Unknown Employee 8, at all times relevant to this

lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

16.     Defendant Unknown Employee 9, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

17.     Defendant Unknown Employee 10, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

18.     Defendant Unknown Employee 11, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

19.     Defendant Unknown Employee 12, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

20.     Defendant Unknown Employee 13, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

21.     Defendant Unknown Employee 14, at all times relevant to this lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

22.     Defendant Unknown Employee 15, at all times relevant to this

lawsuit, was an employee at the St. Louis City Justice Center. They are sued in their individual capacity.

## JURISDICTION AND VENUE

23.     This lawsuit is a civil action arising under the Constitution of the United States of America and Missouri law.

24.     The causes of action for this lawsuit arose in the City of St. Louis in the State of Missouri, which is in the territorial jurisdiction of the Federal District Court of the Eastern District of Missouri.

25.     The Federal District Court of the Eastern District of Missouri has original jurisdiction over the claims arising under the United States Constitution pursuant to 28 U.S.C. § 1331.

26.     The Federal District Court of the Eastern District of Missouri has supplemental jurisdiction over the claims arising under Missouri law pursuant to 28 U.S.C. § 1367.

27.     Venue is appropriate in the Federal District Court of the Eastern District of Missouri pursuant to 28 U.S.C. § 1391.

## FACTS

28.     On August 13, 2021, Plaintiff Robert Childs was detained at the St. Louis City Justice Center.

29.     On information and belief, at least six security breaches occurred between January 2021 and August 2021 at the St. Louis City Justice Center,

including two larger-scale riots in February 2021 and April 2021 where, due to faulty locking mechanisms, inmates escaped from their cells and seized control over a section of the facility for several hours before law enforcement regained control.

30.     It was common knowledge amongst staff and detainees at the St. Louis City Justice Center that stuffing debris, such as toilet paper, into door locks would override the locking mechanism.

31.     The St. Louis City Justice Center was insufficiently staffed to adequately supervise and protect the number of detainees present in the facility during all times relevant to this Complaint.

32.     On or about August 13-14, 2021, Plaintiff was assaulted at the St. Louis City Justice Center.

33.     On August 13-14, 2021, corrections officers failed to supervise and remove inmates who entered the recreational area without authorization around 11:00 PM on August 13, 2021.

34.     Plaintiff was present in the recreational area at approximately 11:00 PM on August 13, 2021.

35.     On August 13, 2021, at around 11:28 PM, approximately 22 inmates were present in the recreational area and several more were moving freely in the adjoining inmate housing unit with only two corrections officers present to supervise.

36.     At approximately 11:28 PM on August 13, 2021, a fight involving six inmates broke out in the recreational area.

37.     Defendant Unknown Employee 1 and Defendant Unknown Employee 2 were stationed outside of the recreational area at the start of the attack, and, instead of intervening, immediately locked Plaintiff and approximately 21 other inmates in the recreational area.

38.     At approximately 11:31 PM, an inmate punched Plaintiff in the face and backed Plaintiff into a corner where two other inmates joined in on the attack against him. Plaintiff was punched, shoved, and kicked across the recreation room in full view of the windows where Defendants watched.

39.     On or around October 18, 2020, Plaintiff was attacked by this same inmate and others. Following the incident, Plaintiff filed multiple grievances against this inmate, and this inmate was listed as a "keep-away" in the system such that the inmate should not have even been in the same wing as Plaintiff, let alone the recreational area.

40.     When the first attack on August 13, 2021 ended, Plaintiff was left bleeding and injured on the ground in the corner of the recreational area on the opposite side of the door and windows to the housing unit, but still in view of the guards watching from outside the room.

41.     By approximately 11:47 PM, 15 Defendant Unknown Employees were gathered outside the recreational area window, including multiple who

wore gloves and held large cans of mace. Defendant Unknown Employee 6 was among those holding a canister of mace.

42.     At approximately 11:51 PM, Defendant Unknown Employee 3 spoke to inmates through the window and stated: "We'll be in there in a minute." However, it took Defendants another approximately two hours and 21 minutes from that moment to extract Plaintiff.

43.     At approximately 12:10 AM on August 14, 2021, Defendant Unknown Employee 4 spoke to inmates through the window and instructed them to bring the injured inmates, including Plaintiff, to the door to the housing unit.

44.     At approximately 12:13 AM, Defendant Unknown Employee 4 unlocked the door to the housing unit and allowed an injured inmate to exit the recreational area before locking the door again, leaving Plaintiff in the room despite his serious injuries.

45.     At approximately 12:17 AM, two inmates picked up and carried Plaintiff to the door to the housing unit. Plaintiff was unable to walk or stand without assistance, and his clothing was covered in his own blood.

46.     Plaintiff was helped to the ground in front of the door to the housing unit at approximately 12:28 AM.

47.     At approximately 12:34 AM, Plaintiff was kicked multiple times while sitting on the ground and holding a shirt to his already bleeding face.

48.   Despite his pleas for help, Plaintiff was left on the ground for another hour and 38 minutes.

49.   At approximately 2:12 AM, Defendant Unknown Employee 5, while wearing no protective gear, opened the door to the recreation room. When the inmates rushed to exit the room, Defendant Unknown Employee 6 deployed some type of spray.

50.   Law enforcement later transported Plaintiff to St. Louis University Hospital, where he was admitted to the Emergency Department at 6:00 AM complaining of flank pain, right shoulder pain, lacerations to his face, chest wall pain, shortness of breath, and numbness down the back of his legs bilaterally.

51.   Medical personnel assessed Plaintiff's injuries, noting positive findings for eye pain and redness, shortness of breath and wheezing, chest pain, right shoulder tenderness and decreased range of motion, tenderness and bony tenderness present throughout his back, abrasions, bruising, ecchymosis, and lacerations.

52.   Medical staff ordered computerized tomography (CT) scans of Plaintiff's head, cervical spine, thoracic spine, and lumbar spine along with x-rays of the chest and shoulder. Plaintiff was administered Norco, Flexeril, and Albuterol.

53.   Plaintiff was discharged at approximately 11:33 AM on August 14,

2021 with diagnoses of alleged assault, face pain, back pain, and acute post-traumatic headache with instructions to continue use of pain medications.

54.    Since the attack on August 13, 2021, Plaintiff has experienced increased back pain, inflammation, nerve pain, urination and bowel issues, and loss of feeling in his legs.

55.    Defendants owed a duty to Plaintiff to ensure his rights were not violated while he was within Defendants' custody.

56.    Defendants had a duty to protect Plaintiff from violence at the hands of other detainees.

57.    Defendants have or had a responsibility to set policies, direct staff training, and establish patterns or practices with respect to proper oversight and protection of detainees.

58.    Defendants knew about the faulty locking mechanisms on the cells in the St. Louis Justice Center and failed to provide a secure environment where Plaintiff and other similarly situated citizens would be free from harm.

59.    Defendants failed to properly monitor the recreational area and subsequently intervene during the attack on Plaintiff.

60.    Defendants' actions caused Plaintiff physical harm.

61.    Defendants' actions caused Plaintiff severe emotional distress.

## COUNT I: VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS BY FAILING TO PROTECT PLAINTIFF FROM HARM UNDER 42 U.S.C. § 1983

62.     Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

63.     Count I applies to Defendants Daniel Isom, Jeffrey Carson, Dale Glass, Adrian Barnes, Tonya Harry, and Unknown Employees 1-15, referred to as "Defendants" in Count I.

64.     Plaintiff was assaulted by multiple inmates during an attack on August 13-14, 2021, while correctional officers watched.

65.     Defendants knew of faulty locking mechanisms in the St. Louis City Justice Center that allowed inmates to move freely throughout the jail, including the recreational area where the attack on Plaintiff occurred.

66.     Defendants knew of insufficient staffing at the St. Louis City Justice Center, which contributed to inmates' abilities to move freely throughout the facility without proper supervision and caused the correctional staff Defendants' inadequate response to the attack on Plaintiff.

67.     Defendants knew of at least one inmate in the recreation area at the time of the incident on August 13, 2021, with a history of violence towards other inmates, including Plaintiff.

68.     Plaintiff, along with other similarly situated detainees, was incarcerated at the St. Louis City Justice Center without adequate supervision

11

and without the protection of adequate locking mechanisms.

69.     Defendants knew of the inadequacies of the locking mechanisms and insufficient staffing at the St. Louis City Justice Center.

70.     Defendants knew that the inadequacies of the locking mechanisms and insufficient staffing at the St. Louis City Justice Center resulted in assaults, riots, and other dangerous activities that jeopardized the health and safety of inmates.

71.     Defendants knew that the inadequacies of the locking mechanisms and insufficient staffing at the St. Louis City Justice Center put Plaintiff and other similarly situated inmates at substantial risk of serious bodily harm.

72.     Defendants knew the failure to properly monitor and separate inmates with a history of violence towards other inmates at the St. Louis City Justice Center put Plaintiff and other similarly situated inmates at substantial risk of serious bodily harm.

73.     The faulty locking mechanisms in the St. Louis City Justice Center constituted a condition posing a substantial risk of serious harm to Plaintiff.

74.     The inadequate staffing at the St. Louis City Justice Center constituted a condition posing a substantial risk of serious harm to Plaintiff.

75.     Defendants' failure to monitor inmates with a history of violence and prevent them from coming into contact with inmates they previously assaulted constituted a condition posing a substantial risk of serious harm to

Plaintiff.

76.     The combination of the faulty locking mechanisms, insufficient staffing, and failure to properly monitor inmates with a history of violence towards other inmates at the St. Louis City Justice Center constituted a condition posing a substantial risk of serious harm to Plaintiff.

77.     Defendants knew, disregarded, and were deliberately indifferent to the substantial risk of serious harm that the faulty locking mechanisms, insufficient staffing, and lack of inmate monitoring posed to Plaintiff and other similarly situated inmates.

78.     Defendants Unknown Employees 1-15 saw that Plaintiff was assaulted multiple times on August 13-14, 2021, but did not intervene to protect him for approximately 2 hours and 41 minutes.

79.     Defendants Unknown Employees 1-15 saw that Plaintiff was assaulted multiple times on August 13-14, 2021 and suffered severe injuries, but did not transport him to a hospital for treatment until approximately 6 hours and 29 minutes after he was first assaulted.

80.     Defendants Daniel Isom, Jeffrey Carson, Dale Glass, Adrian Barnes, and Tonya Harry held supervisory responsibility over the St. Louis City Justice Center, and, despite their knowledge of and responsibility over the inadequate locking mechanisms and staffing levels at the jail, they did not act to ensure Plaintiff and other similarly situated inmates were safe while in

custody.

81.    Defendants were directly responsible for the harm caused to Plaintiff.

82.    Defendants acted under color of state law.

83.    The Fourteenth Amendment to the United States Constitution protects Plaintiff, who was a detainee, from Defendants subjecting him to conditions posing a substantial risk of serious harm.

84.    Defendants, therefore, violated Plaintiff's Fourteenth Amendment rights.

85.    Defendants' actions and inactions caused Plaintiff physical harm.

86.    Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II: FAILURE TO ESTABLISH POLICIES OR OFFICIAL CUSTOMS TO ENSURE THE SAFETY OF PLAINTIFF AND OTHER INMATES UNDER 42 U.S.C. § 1983

87.    Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

88.    Count II applies to Defendants City of St. Louis, Daniel Isom,

Jeffrey Carson, Dale Glass, Adrian Barnes, and Tonya Harry, referred to as "Defendants" in Count II.

89.     Defendants held supervisory, policymaking, and training responsibilities with respect to the St. Louis City Justice Center.

90.     Defendants understaffed the St. Louis City Justice Center.

91.     Defendants utilized faulty locking mechanisms at the St. Louis City Justice Center and failed to replace them despite multiple disturbances and riots which occurred as a result of inmates bypassing the cell locks.

92.     Defendants failed to properly implement a system to monitor and separate victims of inmate-on-inmate violence from their previous attackers.

93.     Plaintiff, along with other similarly situated inmates, was incarcerated at the St. Louis City Justice Center without adequate supervision and without the protection of adequate locking mechanisms.

94.     Defendants knew of the inadequacies of the locking mechanisms and insufficient staffing at the St. Louis City Justice Center.

95.     Defendants knew that the inadequacies of the locking mechanisms and insufficient staffing and monitoring at the St. Louis City Justice Center resulted in assaults, riots, and other dangerous activities that jeopardized the health and safety of inmates.

96.     Defendants knew that the inadequacies of the locking mechanisms and insufficient staffing and monitoring at the St. Louis City Justice Center

15

put Plaintiff and other similarly situated inmates at substantial risk of serious bodily harm.

97.     Defendants failed to use their authority to establish policies or official customs to ensure that Plaintiff and other similarly situated detainees would be protected from harm.

98.     Defendants' failure to establish effective policies or official customs caused the violation of Plaintiff's civil rights.

99.     Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

100.    Defendants acted under color of state law.

101.    Defendants caused Plaintiff physical harm.

102.    Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT III: FAILURE TO TRAIN STAFF TO ENSURE THE SAFETY OF PLAINTIFF AND OTHER INMATES UNDER 42 U.S.C. § 1983

103.    Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

104.   Count III applies to Defendants City of St. Louis, Daniel Isom, Jeffrey Carson, Dale Glass, Adrian Barnes, and Tonya Harry, referred to as "Defendants" in Count III.

105.   Defendants held supervisory, policymaking, and training responsibilities with respect to the St. Louis City Justice Center.

106.   Defendants failed to adequately supervise inmates under their care at the St. Louis City Justice Center.

107.   Defendants failed to ensure that the locking mechanisms at the St. Louis City Justice Center worked.

108.   Defendants allowed inmates to move freely about the jail and did not prohibit inmates from entering areas without proper authorization.

109.   Defendants failed to properly monitor and separate victims of inmate-on-inmate violence from their previous attackers.

110.   Defendants' failure to supervise inmates allowed overcrowding in the areas of the jail, including the recreational area, and thereby compromised the safety of Plaintiff and other similarly situated detainees.

111.   Defendants' failure to monitor inmates allowed inmates with a history of attacking other inmates to roam freely in the facility around victims of their previous attacks, thereby compromising the safety of Plaintiff and other similarly situated citizens.

112.   Defendants were aware of the dangerous conditions present at the

St. Louis City Justice Center due to inadequate staffing and inadequate locking mechanisms.

113.   Defendants knew that the inadequacies of the locking mechanisms and insufficient staffing and monitoring at the St. Louis City Justice Center resulted in assaults, riots, and other dangerous activities that jeopardized the health and safety of inmates.

114.   Defendants acted under color of state law.

115.   Defendants failed to use their authority to properly train staff members to ensure the safety of Plaintiff and other similarly situated citizens.

116.   Defendants' failure to properly train other staff members caused the violation of Plaintiff's civil rights.

117.   Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

118.   Defendants caused Plaintiff physical harm.

119.   Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV: ESTABLISHMENT OF A PATTERN OF PRACTICE WHEREBY INMATES ARE NOT PROTECTED FROM HARM UNDER 42 U.S.C. § 1983

120.   Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

121.   Count IV applies to Defendants City of St. Louis, Daniel Isom, Jeffrey Carson, Dale Glass, Adrian Barnes, and Tonya Harry, referred to as "Defendants" in Count IV.

122.   Defendants held supervisory, policymaking, and training responsibilities with respect to the St. Louis City Justice Center.

123.   Defendants understaffed the St. Louis City Justice Center.

124.   Defendants utilized faulty locking mechanisms at the St. Louis City Justice Center and failed to replace them despite multiple disturbances and riots which occurred as a result of inmates bypassing the cell locks.

125.   Defendants failed to properly monitor and separate victims of inmate-on-inmate violence from their previous attackers.

126.   Plaintiff, along with other similarly situated inmates, was incarcerated at the St. Louis City Justice Center without adequate supervision and without the protection of adequate locking mechanisms.

127.   Defendants knew of the inadequacies of the locking mechanisms and insufficient staffing at the St. Louis City Justice Center.

128.   Defendants knew that the inadequacies of the locking mechanisms

and insufficient staffing and monitoring at the St. Louis City Justice Center resulted in assaults, riots, and other dangerous activities that jeopardized the health and safety of inmates.

129.   Defendants knew that the inadequacies of the locking mechanisms and insufficient staffing and monitoring at the St. Louis City Justice Center put Plaintiff and other similarly situated inmates at substantial risk of serious bodily harm.

130.   Defendants, using their authority, have established a pattern or practice whereby Plaintiff and other similarly situated inmates are routinely subjected to substantial risk of serious harm.

131.   Defendants' establishment of this pattern or practice caused the violation of Plaintiff's civil rights.

132.   Defendants acted with malicious, intentional, or reckless and callous disregard for Plaintiff's civil rights.

133.   Defendants acted under color of state law.

134.   Defendants caused Plaintiff physical harm.

135.   Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just

and proper.

## COUNT V: VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS BY FAILING TO PROVIDE ADEQUATE MEDICAL CARE UNDER 42 U.S.C. § 1983

136.    Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

137.    Count V applies to Defendants Unknown Employees 1-15, referred to as "Defendants" in Count V.

138.    On August 13-14, 2021, Defendants watched as Plaintiff was struck several times by multiple assailants in one of the recreational areas of the St. Louis City Justice Center.

139.    Plaintiff was visibly bleeding and injured when he approached the window where Defendants were watching the attacks on Plaintiff.

140.    Defendants ignored Plaintiff's pleas for assistance, and Plaintiff was later attacked again by several inmates.

141.    Defendants did not permit Plaintiff to leave the recreational area and access care for approximately 2 hours and 41 minutes.

142.    Due to Defendants' actions, Plaintiff did not receive medical care at a hospital for approximately 6 hours and 29 minutes after he was first assaulted.

143.    Plaintiff suffered obvious injuries that Defendants ignored and exacerbated by failing to stop the repeated attacks.

144.    Defendants acted with deliberate indifference to Plaintiff's serious medical needs in violation of his constitutional rights.

145.    Defendants caused Plaintiff physical harm.

146.    Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT VI: STATE NEGLIGENCE CLAIM – PREMISES LIABILITY

147.    Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

148.    Count VI applies to Defendant City of St. Louis, Dan Isom, Jeffrey Carson, and Adrian Barnes, referred to as "Defendants" in Count VI.

149.    Defendants controlled the premises of the St. Louis City Justice Center.

150.    Detainees at the St. Louis City Justice Center frequently bypassed the locks on their cells by stuffing debris, such as toilet paper, into door locks to override the locking mechanisms.

151.    Multiple security breaches occurred before the incident involving Plaintiff on August 13-14, 2021, because inmates were able to exit their cells

and roam freely through the facility.

152.   Defendants knew, or, by using ordinary care, should have known that the locking mechanisms at the St. Louis City Justice Center were faulty.

153.   Defendants knew that some detainees at the St. Louis City Justice Center had a history of physically attacking other inmates.

154.   Defendants knew that some detainees at the St. Louis City Justice Center required monitoring and additional security measures, including being physically separated and secured away from other detainees, to ensure they would not attack other inmates.

155.   Despite multiple security breaches and riots, and the widespread knowledge of the faulty locking mechanisms, Defendants failed to use ordinary care in repairing the locks or otherwise ensuring that Plaintiff and other inmates were safe at the St. Louis City Justice Center.

156.   In failing to address the dangers posed by the faulty locks, inmates were able to enter the recreational area without authorization on August 13, 2021, leading to the attack on Plaintiff.

157.   Defendants' failure to maintain working locking mechanisms created a dangerous condition at the St. Louis City Justice Center.

158.   Defendants' negligence caused Plaintiff physical harm.

159.   Defendants also caused Plaintiff severe emotional distress.

160.   Defendants' failure to maintain working locking mechanisms

created a reasonably foreseeable risk of the kind of injury sustained by Plaintiff.

161.   Defendants negligently created the dangerous condition or had actual or constructive notice of the dangerous condition at the St. Louis City Justice Center and could have acted in time to prevent the injuries suffered by Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT VII: STATE NEGLIGENCE CLAIM – MINISTERIAL LIABILITY

162.   Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

163.   Count VII applies to Defendants Daniel Isom, Jeffrey Carson, Dale Glass, Adrian Barnes, Tonya Harry, and Unknown Employees 1-15, referred to as "Defendants" in Count VII.

164.   Detainees at the St. Louis City Justice Center frequently bypassed the locks on their cells by stuffing debris, such as toilet paper, into door locks to override the locking mechanisms.

165.   Multiple security breaches occurred before the incident involving Plaintiff on August 13-14, 2021, because inmates were able to exit their cells and roam freely through the facility.

166.   Defendants knew, or, by using ordinary care, should have known that the locking mechanisms at the St. Louis City Justice Center were faulty.

167.   Despite multiple security breaches and riots, and the widespread knowledge of the faulty locking mechanisms, Defendants failed to use ordinary care in repairing the locks or otherwise ensuring that Plaintiff and other inmates were safe at the St. Louis City Justice Center.

168.   In failing to address the dangers posed by the faulty locks, inmates were able to enter the recreational area without authorization on August 13, 2021, leading to the attack on Plaintiff.

169.   At the time of Plaintiff's injury, the St. Louis City Justice Center was inadequately staffed.

170.   At the time of Plaintiff's injury, Defendants did not utilize sufficient safety protocols to ensure the wellbeing of inmates at the St. Louis City Justice Center.

171.   At the time of Plaintiff's injury, Defendants knew that the St. Louis City Justice Center was inadequately staffed.

172.   At the time of Plaintiff's injury, Defendants knew that they were not utilizing sufficient safety protocols to ensure the wellbeing of inmates at

the St. Louis City Justice Center.

173.   Defendants had a ministerial duty to ensure the safety of Plaintiff and other similarly situated inmates.

174.   Defendants had a ministerial duty to ensure that security locking mechanisms functioned at the St. Louis City Justice Center.

175.   Defendants breached their ministerial duties.

176.   Defendants' failure to fulfill their ministerial duties directly caused Plaintiff's injuries.

177.   Defendants' failure to fulfill their ministerial duties proximately caused Plaintiff's injuries.

178.   Plaintiff's injuries were a reasonably foreseeable result of Defendants' failure to fulfill their ministerial duties.

179.   Defendants caused Plaintiff physical harm.

180.   Defendants also caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:   /s/ *Elad Gross*
Elad Gross
Bar Number #67125MO
Attorney at Law
5653 Southwest Ave.
St. Louis, MO 63139
Phone: 314-753-9033
Fax: 855-242-9720
Email: Elad@EladGross.org


**NIEMEYER, GREBEL & KRUSE, LLC**

*/s/ Patrick A. Hamacher*
Patrick A. Hamacher
Bar Number #63855MO
211 N Broadway, Suit 2950
St. Louis, MO 63102
Phone: 314-241-1919
Fax: 314-665-3017
Email: Hamacher@ngklawfirm.com


*Attorneys for Plaintiff Robert Childs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2023, the foregoing was filed electronically with the Clerk of the Court to be served upon all parties by operation of the Court's electronic filing system.

*/s/Elad Gross*
Elad Gross
Attorney at Law